IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

(1) FIFTH THIRD BANK, an Ohio banking corporation,
Plaintiff,

v.

(1) LEES SPECIALTY COMPOUNDING, LLC, a Delaware limited liability company, (2) THE APOTHECARY SHOPPE, LLC, a Delaware limited liability company, (3) THE APOTHECARY SHOPPE OF B.A., LLC, a Delaware limited liability company, (4) GETMAN-APOTHECARY SHOPPE LLC, a Delaware limited liability company, and (5) LEES SPECIALTY COMPOUNDING, INC., a Delaware corporation,

Defendants.

Case No. 15-CV-631-JED-FHM

Judge: John E. Dowdell

## COMPLAINT

Plaintiff Fifth Third Bank, an Ohio banking corporation ("Fifth Third" or "Plaintiff"), by its undersigned attorneys, and for its Complaint against defendants Lees Specialty Compounding, LLC, a Delaware limited liability company ("Lees LLC"), The Apothecary Shoppe, LLC, a Delaware limited liability company ("Apothecary"), The Apothecary Shoppe of B.A., LLC, a Delaware limited liability company ("Apothecary B.A."), Getman-Apothecary Shoppe LLC, a Delaware limited liability company ("Getman", collectively with Lees LLC, Apothecary, and Apothecary B.A., the "Borrowers"), and Lees Specialty Compounding, Inc., a Delaware corporation ("Lees Inc." or "Guarantor", collectively with Borrowers, the "Defendants") respectfully alleges as follows:

## NATURE OF THE ACTION

1. Fifth Third, as the lender under the Loans (as defined below), files this action stemming from Borrowers' breach of the Credit Agreement and Mezzanine Loan Agreement (both as defined below) extending over $13 million in credit as well as Guarantor's breach of its guaranty under the same.

2. In addition to money damages, Fifth Third seeks the appointment of a receiver to protect Defendants' assets and Fifth Third's collateral as well as to prevent irreparable harm to Defendants' businesses and property. Defendants have informed Fifth Third that that the board of directors for Lees Inc. and the board of managers for Lees LLC have resigned en masse without replacements. Pursuant to the loan documents, Defendants agreed to and Fifth Third has the right to appoint a receiver over Defendants' businesses and assets under these circumstances.

## PARTIES

3. Fifth Third is an Ohio banking corporation, with its principal place of business in Cleveland, Ohio.

4. Lees LLC is a Delaware limited liability company with its principal place of business located in Tulsa, Oklahoma. The sole members of Lees LLC are Deril J. Lees, Jr., an Oklahoma resident and citizen of the State of Oklahoma, and Lees Inc., a Delaware corporation.

5. Apothecary is a Delaware limited liability company with its principal place of business located in Tulsa, Oklahoma. The sole member and sole manager of Apothecary is Lees LLC.

6. Apothecary B.A. is a Delaware limited liability company with its principal place of business located in Tulsa, Oklahoma. The sole member and sole manager of Apothecary B.A. is Lees LLC.

7.      Getman is a Delaware limited liability company with its principal place of business located in Tulsa, Oklahoma. The sole member and sole manager of Getman is Lees LLC, the sole members of which are Mr. Lees and Lees Inc.

8.      Lees Inc. is a Delaware corporation with its principal place of business located in Tulsa, Oklahoma.

9.      Defendants are in the pharmacy and drug compounding business with locations in Tulsa, Oklahoma. A substantial portion of the underlying events alleged in this Complaint took place in the State of Oklahoma.

## JURISDICTION AND VENUE

10.     This Court has diversity jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a)(1). Plaintiff and Defendants are citizens of different states. No member of any Defendant shares citizenship with Plaintiff. The amount in controversy exceeds $75,000, exclusive of interest and costs.

11.     Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events and omissions giving rise to Plaintiff's claims occurred in the State of Oklahoma.

## FACTUAL ALLEGATIONS

**A.      Defendants enter into the Senior Loan and Mezzanine Loan.**

12.     Pursuant to the Credit and Security Agreement (the "<u>Credit Agreement</u>") by and between Defendants, as borrowers and guarantor, and Fifth Third, as lender, dated December 20, 2013, Fifth Third made loans and other financial accommodations (the "<u>Senior Loan</u>") to Borrowers (as amended, restated, supplemented, or otherwise modified from time to time, the "<u>Credit Agreement</u>", a true and accurate copy of which is attached hereto as **Exhibit 1** and incorporated herein by reference).

13. In connection with the Credit Agreement and Senior Loan, Borrowers each executed and delivered to Fifth Third: (a) that certain Revolving Note dated December 20, 2013, with a revolving commitment amount of $500,000 as of the closing date (as amended, restated, supplemented, or otherwise modified the "Revolving Note"); and (b) that certain Term Loan Note dated December 20, 2013 in the original principal amount of $7,200,000 (as amended, restated, supplemented, or otherwise modified the "Term Note", collectively with the Revolving Note, the "Senior Notes", true and accurate copies of which are attached hereto as **Group Exhibit 2** and incorporated herein by reference).

14. As a condition to the Senior Loan and to Fifth Third entering into the Credit Agreement and Senior Notes, Guarantor also executed the Credit Agreement, whereby Guarantor agreed to unconditionally and absolutely guaranty to Fifth Third the full payment of all of Borrowers' obligations (the "Senior Loan Guaranty") under the Credit Agreement, Senior Loan, Senior Notes, and the Loan Documents (as hereinafter defined).

15. Pursuant to the Credit Agreement, to secure the Senior Loan, Defendants granted Fifth Third a security interest in all of each Defendant's real and personal property, whether now owned or existing, or hereafter arising or acquired or received, wherever located (the "Collateral").

16. Defendants executed and delivered to Fifth Third the following amendments to the Credit Agreement, all of which, without limitation, reaffirmed Defendants' obligations under the Credit Agreement and Senior Notes: (i) First Amendment to Credit and Security Agreement dated June 30, 2014, and (ii) Second Amendment to Credit and Security Agreement dated January 27, 2015 (collectively, the "Credit Agreement Amendments", true and accurate copies of which are attached hereto as **Group Exhibit 3** and incorporated herein by reference).  The Credit

4

Agreement, Senior Notes, and Credit Agreement Amendments are collectively the "Senior Loan Documents".

17. Pursuant to the Mezzanine Loan and Security Agreement by and between Defendants, as borrowers and guarantor, and Fifth Third, as lender, dated December 20, 2013, Fifth Third made a loan and other financial accommodations (the "Mezzanine Loan") to Borrowers (as amended, restated, supplemented, or otherwise modified from time to time, the "Mezzanine Loan Agreement", a true and accurate copy of which is attached hereto as **Exhibit 4** and incorporated herein by reference).

18. In connection with the Mezzanine Loan Agreement and Mezzanine Loan, Borrowers each executed and delivered to Fifth Third that certain Mezzanine Loan Note dated December 20, 2013, in the original principal amount of $7,200,000 (as amended, restated, supplemented, or otherwise modified the "Mezzanine Note", a true and accurate copy of which is attached hereto as **Exhibit 5** and incorporated herein by reference).

19. As a condition to the Mezzanine Loan and to Fifth Third entering into the Mezzanine Loan Agreement and Mezzanine Note, Guarantor also executed the Mezzanine Loan Agreement, whereby Guarantor agreed to unconditionally and absolutely guaranty to Fifth Third the full payment of all of Borrowers' obligations (the "Mezzanine Loan Guaranty", collectively with the Senior Loan Guaranty, the "Guaranty") under the Mezzanine Loan Agreement, Mezzanine Note, and the Loan Documents (as hereinafter defined).

20. Pursuant to the Credit Agreement, to secure the Mezzanine Loan, Defendants granted Fifth Third a security interest in the Collateral.

21. Defendants executed and delivered to Fifth Third the following amendments to the Mezzanine Loan Agreement, all of which, without limitation, reaffirmed Defendants'

obligations under the Mezzanine Loan Agreement and Mezzanine Note: (i) First Amendment to Mezzanine Loan and Security Agreement dated June 30, 2014, and (ii) Second Amendment to Mezzanine Loan and Security Agreement dated January 27, 2015 (collectively, the "Mezzanine Loan Agreement Amendments", true and accurate copies of which are attached hereto as **Group Exhibit 6** and incorporated herein by reference). The Mezzanine Loan Agreement, Mezzanine Notes, and Mezzanine Loan Agreement Amendments are collectively the "Mezzanine Loan Documents", collectively with the Senior Loan Documents and all other ancillary and related documents, the "Loan Documents".

22. Defendants were required to repay the Senior Loan and Mezzanine Loan (collectively, the "Loans") pursuant to the terms set forth in the Loan Documents.

**B.   Defendants default under the Loan Documents.**

23. By no later than August 4, 2015, Defendants were in default of, among others, the following provisions of the Loan Documents:

    a) Section 10.5 of the Credit Agreement and Mezzanine Loan Agreement as a result of Borrowers failing to maintain a certain minimum EBITDAE;

    b) Section 10.5 of the Credit Agreement and Mezzanine Loan Agreement as a result of Borrowers failing to maintain a certain Senior Fixed Charge Coverage Ratio, Total Fixed Charge Coverage Ratio, Senior Leverage Ratio, and EBITDAE; and

    c) Section 10.5 of the Credit Agreement and Mezzanine Loan Agreement as a result of Borrowers failures to deliver certain audited financial statements

(collectively, the "Specified Events of Default").

24. Thereafter, Fifth Third and each of the Defendants entered into two separate forbearance agreements dated as of August 4, 2015, regarding the Credit Agreement and Mezzanine Loan Agreement (collectively, the "Forbearance Agreements", true and accurate copies of which are attached hereto as **Group Exhibit 7** and incorporated herein by reference,

collectively with the Loan Documents, the "Loan Documents"), whereby each of the Defendants acknowledged and admitted that, without limitation:

    a) the Specified Events of Default had occurred, were continuing, and were all events of default under the Loan Documents;

    b) as of July 31, 2015, the outstanding principal balance under the Senior Loan was $5,657,142.78; and

    c) as of July 31, 2015, the outstanding principal balance under the Mezzanine Loan was $7,200,000.

25. Under the Forbearance Agreements, Fifth Third agreed to forbear from exercising its rights under the Loan Documents with respect to the Specified Events of Defaults until the earlier of October 31, 2015, any event of default under the Forbearance Agreements, or any event of default under the Loan Documents outside of the Specified Events of Default.

26. On or about October 21, 2015, Defendants advised Fifth Third that (i) all members of the board of directors for Lees Inc. resigned en masse and without replacement, and (ii) all of the members of the board of managers for Lees LLC resigned en masse and without replacement (the "Resignations"). Defendants provided Fifth Third with certain letters of resignation (the "Board Resignation Letters"), including those true and accurate copies of which are attached hereto as **Group Exhibit 8** and incorporated herein by reference.

27. According to both the Credit Agreement and Mezzanine Loan Agreement, the Resignations constitute an event of default, as any change in any Defendant's condition or affairs (financial or otherwise) that has or may reasonably be expected to cause a material adverse effect is an event of default. (Credit Agreement §§ 1.2 "Material Adverse Effect" and 10.8; Mezzanine Loan Agreement §§ 1.2 "Material Adverse Effect" and 10.8.)

28. Because the Resignations constitute additional defaults under the Loan Documents, the Resignations are also defaults under the Forbearance Agreements.

7

29. In addition, Borrowers have failed to cure any of the original Specified Events of Default, all of which continue to exist and all of which are also events of default under Loan Documents, including the Forbearance Agreements.

30. Pursuant to both the Credit Agreement and Mezzanine Loan Agreement, in the event of any default, all obligations under the Loan Documents shall be immediately due and payable to Fifth Third. (Credit Agreement § 11.1; Mezzanine Loan Agreement § 11.1.)

31. Borrowers have failed and continue to fail to satisfy their indebtedness and obligations to Fifth Third under the Loan Documents.

32. Guarantor has failed and continues to fail to satisfy Borrowers' indebtedness and obligations to Fifth Third under the Loan Documents, which is a default under the Guaranty.

33. As of October 30, 2015, the aggregate outstanding principal balance of: (i) the Term Note was $5,657,143, exclusive of interest, fees, costs and expenses; and (ii) the Mezzanine Note was $7,423,115, exclusive of interest, fees, costs and expenses (collectively, the "Indebtedness"), all of which continue to accrue.

**C.    The appointment of a receiver.**

34. Pursuant to both the Credit Agreement and Mezzanine Loan Agreement, Defendants consented to Fifth Third exercising every right and remedy available to it in law and equity, including specifically the right to appoint a receiver over Defendants' businesses without notice or bond, to the full extent permitted by applicable statute or law. (Credit Agreement § 11.5; Mezzanine Loan Agreement § 11.5.)

35. Upon the occurrence of a default under the Forbearance Agreements, Defendants consented to the appointment of a receiver: "Upon the occurrence of a Forbearance Default, the [Defendants] hereby consent to the appointment of such a receiver without notice or bond, to the

full extent permitted by applicable statute or law; and waives any and all defenses to such appointment and agrees not to oppose any application therefor by [Fifth Third],…. Such receivership shall, at the option of [Fifth Third], continue until full payment of all of the Obligations." (Forbearance Agreements § 3(J).)

36. Fifth Third requests that C. David Rhoades be appointed as receiver. C. David Rhoades is knowledgeable and experienced in asset sales, mergers, and acquisitions for distressed middle-market companies, including liquidating assets and selling a company quickly and under extremely troubled circumstances.

## COUNT I
### (MONEY JUDGMENT AGAINST BORROWERS FOR BREACH OF THE CREDIT AGREEMENT AND MEZZANINE LOAN AGREEMENT)

37. Fifth Third re-alleges and incorporates herein for this Count I each of the allegations contained in the preceding and succeeding paragraphs as though fully set forth herein.

38. Fifth Third and Borrowers are parties to the Credit Agreement, Mezzanine Loan Agreement, and the other Loan Documents.

39. The Credit Agreement, Mezzanine Loan Agreement, and the other Loan Documents are valid, binding, and enforceable contracts between Fifth Third and Borrowers.

40. Fifth Third has performed all obligations and covenants on its part to be performed pursuant to the Credit Agreement, Mezzanine Loan Agreement, and the Loan Documents.

41. Events of default have occurred and are continuing under the Credit Agreement, Mezzanine Loan Agreement, and the Loan Documents, including, without limitation: (i) the Resignations and (ii) the Specified Events of Default.

42. As a result of these events of default, Borrowers have each breached the Credit Agreement, Mezzanine Loan Agreement, and the other Loan Documents.

43. Upon the occurrence of these events of default, all of Borrowers' obligations and indebtedness under the Credit Agreement, Mezzanine Loan Agreement, and the other Loan Documents became immediately due and payable to Fifth Third.

44. Borrowers have failed to satisfy their indebtedness and obligations to Fifth Third under the Loan Documents.

45. As a direct and proximate result of Borrowers' breach of the Credit Agreement, Mezzanine Loan Agreement, and the other Loan Documents, as of October 30, 2015, Borrowers owe Fifth Third at least $13,080,258.

46. The Credit Agreement and Mezzanine Loan Agreement also entitle Fifth Third to its attorneys' fees and costs incurred in enforcing the Loan Documents. (Credit Agreement §§ 1.2 "Obligations" and 11.1; Mezzanine Loan Agreement §§ 1.2 "Obligations" and 11.1; Forbearance Agreements § 16.)

WHEREFORE, Fifth Third respectfully requests that this Court enter judgment in its favor on Count I and against Borrowers in the amount of $13,080,258, plus interest through the date of judgment as well as late fees, attorneys' fees, costs, and such further relief as is appropriate.

## COUNT II
**(MONEY JUDGMENT AGAINST GUARANTOR FOR BREACH OF THE GUARANTY)**

47. Fifth Third re-alleges and incorporates herein for this Count II each of the allegations contained in the preceding and succeeding paragraphs as though fully set forth herein.

48. Fifth Third and Guarantor are parties to the Credit Agreement, Mezzanine Loan Agreement, and the other Loan Documents.

49. The Credit Agreement, Mezzanine Loan Agreement, and the other Loan Documents are valid, binding, and enforceable contracts between Fifth Third and Guarantor.

50. Fifth Third has performed all obligations and covenants on its part to be performed pursuant to the Guaranty and the Loan Documents.

51. Pursuant to the Guaranty, Guarantor unconditionally and absolutely guaranteed full payment of all of Borrowers' obligations and indebtedness under the Loan Documents.

52. Guarantor has defaulted on its obligations under the Guaranty by failing to provide full payment of all of Borrowers' obligations and indebtedness under the Loan Documents.

53. As a direct and proximate result of Guarantor's breach of the Guaranty, as of October 30, 2015, Guarantor owes Fifth Third at least $13,080,258.

54. The Loan Documents also entitle Fifth Third to its attorneys' fees and costs incurred in enforcing the Loan Documents. (Credit Agreement §§ 1.2 "Obligations" and 11.1; Mezzanine Loan Agreement §§ 1.2 "Obligations" and 11.1; Forbearance Agreements § 16.)

WHEREFORE, Fifth Third respectfully requests that this Court enter judgment in its favor on Count II and against Guarantor in the amount of $13,080,258, plus interest through the date of judgment as well as late fees, attorneys' fees, costs, and such further relief as is appropriate.

## COUNT III
### (APPOINTMENT OF RECEIVER)

55. Fifth Third re-alleges and incorporates herein for this Count III each of the allegations contained in the preceding and succeeding paragraphs as though fully set forth herein.

56. Fifth Third and Defendants entered into the Loan Documents.

57. The Loan Documents are valid, binding, and enforceable contracts between Fifth Third and Defendants.

58. Fifth Third has performed all obligations and covenants on its part to be performed pursuant to the Loan Documents.

59. Events of default have occurred and are continuing under the Loan Documents, including, without limitation: (i) the Resignations and (ii) the Specified Events of Default.

60. As a result of the events of default, Defendants breached the Credit Agreement, Mezzanine Loan Agreement and Forbearance Agreements.

61. Upon occurrence of the events of default, pursuant to the Credit Agreement, Mezzanine Loan Agreement, and Forbearance Agreements, Defendants agreed to Fifth Third's right to appoint a receiver over each Defendant's business.  (Credit Agreement § 11.5; Mezzanine Loan Agreement § 11.5; Forbearance Agreements § 3(J).)

62. A receiver is necessary to secure and preserve Defendants' property and Fifth Third's Collateral under the Loan Documents.  The value of Defendants' property and Fifth Third's Collateral is at risk of imminent dissipation because of the Resignations, which were en masse as of October 21, 2015.  No replacements for the board of directors for Lees Inc. and the board of managers for Lees LLC have been appointed.

63. C. David Rhoades is knowledgeable and experienced in asset sales, mergers, and acquisitions for distressed middle-market companies, including liquidating assets and selling a company quickly and under extremely troubled circumstances.  Documentation further supporting C. David Rhoades's appointment as receiver is in the concurrently filed Emergency Motion to Appoint Receiver and brief in support of this motion.

WHEREFORE, Fifth Third respectfully requests that this Court appoint C. David Rhoades as receiver to manage the operations and assets of all Defendants pending a trial on the merits as requested in Fifth Third's concurrently filed Emergency Motion for Appointment of a Receiver and such further relief as is appropriate.

Dated:  November 3, 2015    Respectfully submitted,

**FIFTH THIRD BANK**

By: */s/ Mark A. Craige*

Mark A. Craige, OBA #1992
CROWE & DUNLEVY
A Professional Corporation
500 Kennedy Building
321 South Boston Avenue
Tulsa, OK 74103-3313
Telephone: (918) 592-9800
Facsimile: (918) 592-9801
mark.craige@crowedunlevy.com

-and-

Kenneth J. Ottaviano (*pro hac vice pending*)
William J. Dorsey (*pro hac vice pending*)
KATTEN MUCHIN ROSENMAN LLP
525 West Monroe Street, Suite 1900
Chicago, Illinois 60661
Telephone:  312-902-5200
Facsimile:  312-902-1061
kenneth.ottaviano@kattenlaw.com
william.dorsey@kattenlaw.com