# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) FIFTH THIRD BANK, an Ohio banking corporation, | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | )<br>) |
| (1) LEES SPECIALTY COMPOUNDING, LLC, a Delaware limited liability company, (2) THE APOTHECARY SHOPPE, LLC, a Delaware limited liability company, (3) THE APOTHECARY SHOPPE OF B.A., LLC, a Delaware limited liability company, (4) GETMAN-APOTHECARY SHOPPE LLC, a Delaware limited liability company, and (5) LEES SPECIALTY COMPOUNDING, INC., Delaware corporation, | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) Case No. 15-cv-00631-TCK-FHM<br>) Judge: Hon. Terence C. Kern |
| Defendants. | ) |

## JOINT MOTION FOR AUTHORITY TO SELL
## ASSETS TO STALKING HORSE BIDDER
## SUBJECT TO HIGHER OFFERS AND NOTICE TO FILE OBJECTIONS
## ("SALE MOTION")

Plaintiff Fifth Third Bank, an Ohio banking corporation ("*Fifth Third*" or "*Plaintiff*"), by its undersigned attorneys, and C. David Rhoades, the duly appointed, qualified and acting receiver ("*Receiver*")1 of Lees Specialty Compounding, LLC, The Apothecary Shoppe, LLC, The Apothecary Shoppe of B.A., LLC, Getman-Apothecary Shoppe, LLC and Lees Specialty Compounding, Inc. (collectively, "*Lees*"), pursuant to *§ 1554, Tit. 12, Okla.Stat.1910*, hereby file this Motion for Authority to Sell Assets to a Stalking Horse Bidder, Subject to Higher Offers and Notice to File

---

1 The Plaintiff and the Receiver as collectively referred to in this Motion as the "Movants".

Objections (the "*Sale Motion*") and herein seek an order from this Court (the "*Sale Order*") [2] granting Receiver such authority. In support of this Sale Motion, Movants submit the following:

## Introduction

1. Movants file this Sale Motion in conjunction with and as an integral part of a separate motion wherein Movants seek an order from this Court to establish procedures for the sale of the Assets (as defined hereafter) pursuant to *§ 1554, Tit. 12, Okla.Stat.1910 (the "Bid Procedures Motion").*

2. Because of the relatedness and interdependency of this Sale Motion and the Bid Procedures Motion, Movants outline herein the facts related to all of these matters.

## Jurisdiction

3. This Court has jurisdiction to hear this Sale Motion and venue is proper before this Court.

## Factual Background

4. On November 3, 2015, Fifth Third Bank ("*Plaintiff*") commenced this action following Lees breach of its credit and guaranty agreements with Plaintiff. Plaintiff sought and obtained an Order of this Court directing the appointment of the Receiver on November 16, 2015 (the "*Receiver Order*"). Receiver was appointed over Lees' property the entities and businesses and given management powers vis-à-vis Lees and its businesses (collectively, the "*Estate*").

5. Since his appointment, Receiver has operated Lees' businesses, including the following stores: The Apothecary Shoppe, LLC located at 6136 East 51st Street, Tulsa, Oklahoma; The Apothecary Shoppe of B.A., LLC located at 510 North Elm Place, Broken Arrow, Oklahoma;

---

[2] A proposed order will be submitted to the Court and circulated in advance of the hearing on this Bid Procedures Motion.

and the Getman-Apothecary Shoppe, LLC located at 1725 East 19th Street, Tulsa Oklahoma (collectively, the "*Stores*").

6.      Receiver has marketed Lees' businesses and property for sale for the benefit of the Estate.  Receiver received an offer from Marcain Properties, LLC ("*Stalking Horse Bidder*") to purchase certain of Lees' assets for $2,500,000 (the "*Purchase Price*") as set forth in that certain Asset Purchase Agreement executed by Stalking Horse Bidder and attached hereto as Exhibit "1" (the "*Asset Purchase Agreement*").  The transaction contemplated by the Asset Purchase Agreement is referred to as the "*Sale*" herein.

7.      The obligations of Receiver and Stalking Horse Bidder to consummate the Asset Purchase Agreement are subject to the conditions set forth therein and the approval of this Court of a Buyer (as defined below) by entry of the Sale Order.

8.      The assets Stalking Horse Bidder seeks to purchase are defined as "Assets" in the Asset Purchase Agreement and include: inventory, chattels, equipment, furniture, trade fixtures, machinery and other tangible personal property in the Stores, contract rights, leases for the Stores, restrictive covenant rights, customer lists, good will, trade names, phone numbers, post office box numbers, website with URL and bank accounts.  The definition of "*Assets*" in the Asset Purchase Agreement is incorporated herein.  Stalking Horse Bidder further seeks assignment of certain contracts, unexpired leases and/or restrictive covenants to it in connection with the Sale.  Such contracts and unexpired leases are defined as the "*Assigned Contracts*" in the Asset Purchase Agreement and such restrictive covenants are defined as the "*Restrictive Covenants*" in the Asset Purchase Agreement and such definitions are incorporated herein.

9.      The Assets are subject to Plaintiff's first priority security interest granted in the credit

agreements and are believed to be otherwise unencumbered. Plaintiff consented to the Sale on the terms stated herein and in the Asset Purchase Agreement.

10. To the best of Receiver's knowledge, information and belief after due inquiry, neither Stalking Horse Bidder nor its representatives are known insiders or creditors of Lees, its affiliates or any party hereto, including Receiver and Plaintiff.

11. Stalking Horse Bidder has demonstrated to Receiver it is purchasing the Assets in good faith and for fair value. The Asset Purchase Agreement is the product of substantial, extensive and good faith negotiations conducted at arm's length, without collusion and with all parties being represented by independent counsel.

12. Stalking Horse Bidder has demonstrated to Receiver that it has the financial ability to consummate the Sale and is a ready, willing and able buyer for the Assets.

13. Stalking Horse Bidder understands that it is purchasing the Assets in the context of a receivership estate. Details of such representations and warranties are set forth in detail herein and in the Asset Purchase Agreement and are limited thereby. Except as provided herein and in the Asset Purchase Agreement, none of the representations, warranties, covenants and agreements contained therein or herein shall survive the closing of the sale of the Assets.

14. In the exercise of his business judgment, Receiver believes the Sale is in the best interest of all parties and represents the highest and best price received prior to the filing of this Sale Motion.

15. Movants seek this Court's approval of procedures for the sale of the Assets (the "*Bid Procedures*") and the form of the Asset Purchase Agreement in its Bid Procedures Motion filed contemporaneously herewith.

16. The Bid Procedures Motion specifies the manner and means of conducting the sale of the Assets whereby the Stalking Horse Bidder's offer to purchase the Assets pursuant to the Asset Purchase Agreement is subject to a bidding process, referred to as the "*Auction*". The Auction shall be conducted as set forth in the Bid Procedures Order. The successful bidder at the Auction, whether the Stalking Horse Bidder or another entity, shall be deemed the "*Buyer*" for purposes of this Motion.

17. Through this Sale Motion, Movants seeks entry of the Sale Order authorizing Receiver to sell the Assets to Buyer.

18. Movants request this Court approve the sale of the Assets to Buyer and thereby vest Buyer with all right, title and interest of Lees to the Assets, free and clear of all remaining liens, claims, interests and encumbrances of any kind or nature thereof, if any. Upon closing of the sale of the Assets, all of the liens, claims and encumbrances of all creditors and parties in interest of Lees shall attach to the cash proceeds from the sale of the Assets (the "*Proceeds*") with the same priority, nature, extent and validity as were present against the Assets had such not been sold without any prejudice to any party's right to assert such claims.

**Legal Authorities**

19. Courts have held that approval of a proposed sale by a receiver is appropriate if the Court finds the transaction represents a reasonable business judgment on the part of the receiver. Courts have permitted a proposed sale of all or substantially all the assets of insolvent entities outside the ordinary course of business if such a sale is necessary to preserve the value of assets for the estate, its creditors or interest holders. This is even further bolstered when, as here, the lien creditor consents to the sale.

20. Movants submit the proposed sale of the Assets is a reasonable business decision of

the Receiver in light of the circumstances and is in the best interest of the estate and its creditors. Further, Movants submit that a sale presents the best opportunity to realize the maximum value for the Assets and is necessary to preserve the value thereof.

21. When the Court entered the Receiver Order, it took possession of all of the Assets through Receiver. There is no doubt about this time honored concept as discussed in *Farrimond v. State ex rel. Fisher*, 8 P.3d 872 (Okla. 2000) at page 875:

> Oklahoma law makes clear that in a receivership the court takes possession of the assets of the entity placed in receivership. In *Norman v. Trison Development Corp.,* 1992 OK 67 ¶ 7, 832 P.2d 6, we held,
>
> When property or a business is placed in receivership, *the court takes possession of the assets through its court-appointed receiver.* A receiver is an officer of the court who holds property and funds coming into his hands by the same right and title as the person for whose title he is the receiver....
>
> The teaching of *Norman* is that receivership property is in possession of the court, the receiver is the representative of the court, and the right of the receiver to receivership property is derived from the entity which has been placed in receivership.

22. When the Court acquired possession of the Assets upon entry of the Receiver Order, it obtained exclusive jurisdiction over Lees' assets and any claims against them. This concept was discussed in detail by the Oklahoma Supreme Court in the case of *State v. District Court of Tulsa County*, 198 P. 480, 482 -483 (Okla. 1921) at page 482:

> "The possession of the res vests the court which has first acquired jurisdiction with the power to hear and determine all controversies relating thereto, and for the time being disables other courts of co-ordinate jurisdiction from exercising a like power. This rule is essential to the orderly administration of justice, and to prevent unseemly conflicts between courts whose jurisdiction embraces the same subjects and persons. *Freeman v. Howe*, 24 How. 450; *Peck v. Jenness*, 7 How. 612, 624, 625; *Taylor v. Carryl*, 20 How. 583, 596,

> 597; *Wiswall v. Sampson*, 14 How. 52; *Covell v. Heyman*, 111 U. S. 176, 4 Sup. Ct. 355; *Heidritter v. Oilcloth Co.*, 112 U. S. 294, 302, 5 Sup. Ct. 135; *Riggs v. Johnson Co.*, 6 Wall. 166, 196; *Central Trust Co. of New York v. South Atlantic & O. R. Co.*, 57 Fed. 3. The doctrine in question is not limited in its application to cases where property has actually been seized under judicial process before a second suit is instituted in another court, but it applies as well where suits are brought to enforce liens against specific property, to marshal assets, administer trusts, or liquidate insolvent estates, and in all other suits of a similar nature, where, in the progress of the litigation, the court may be compelled to assume the possession and control of specific personal or real property. In cases of the latter kind, the rule is that the tribunal which first acquires jurisdiction of the cause by the issuance and service of process is entitled to retain it to the end, without interference or hindrance on the part of any other court.

23. To facilitate this Court's jurisdiction and to protect Lees' assets in its possession, it has long been held that other parties should not be permitted to interfere with a receiver's administration of the assets held *in custodia legis*. This concept dates back at least 156 years to English common law and the case of *Ames v Birkenhead Dock Trustees* (1855) 20 Beav 332 wherein Lord Romilly, Master of Rolls[3] said "There is no question but that this court will not permit a receiver appointed by its authority, and who is therefore its officer, to be interfered with or dispossessed of the property he is directed to receive, by anyone, although the order appointing him may be perfectly erroneous; this court requires and insists that application should be made to the court, for permission to take possession of any property of which the receiver either has taken or is directed to take possession". Cited with approval by the U.S. Supreme Court in *Barton v. Barbour*, 104 U.S. 126, 129 (U.S. 1881).

24. This Court granted various forms of injunctive relief in the Receiver Order. The Court's authority to order such relief is a creature of common law and has long been recognized by

---

[3] The Master of the Rolls and Records of the Chancery of England, known as the Master of the Rolls, is the second most senior judge in England and Wales, after the Lord Chief Justice.

both State and Federal Courts. The appointment of Receiver constitutes an implied injunction against any interference with property in the custody of Receiver. *Moller v. Herring,* 255 F. 670, 670 (5th Cir. 1919). "A person who has, by the order of a court of competent jurisdiction, been appointed receiver of designated property becomes an executive officer of the court which appointed him, and the property received by him is *in custodia legis*." *Tindall v. Nisbet,* 113 Ga. 1114, 39 S.E. 450, 55 L.R.A. 225. It is the duty of the court to protect from interference the property in its possession through its receiver, an officer of the court, *Marshall v. Lockett,* 76 Ga. 289, 290, and property held *in custodia legis* by virtue of a duly appointed receiver cannot be sold so as to interfere with the possession of the receiver, *McKoy v. Bush,* 200 Ga. 759, 760(2), 38 S.E.2d 669, and such an attempted sale without leave of the court is void. *Coker v. Norman,* 162 Ga. 238, 133 S.E. 243. One who by such a sale undertakes to interfere with the possession of the court may be punished for contempt. *Wikle v. Silva,* 70 Ga. 717. See also *Vestel v. Tasker,* 123 Ga. 213, 51 S.E. 300; *Hall v. Stulb,* 126 Ga. 521, 522, 55 S.e. 172". *Erikson v. Hewlett,* 212 Ga. 423, 425, 93 S.E.2d 563, 565 (Ga.1956).

25. The concepts of Receivers holding property *In Custodia Legis* and the issuance of injunctions to protect such property to facilitate in administration by a duly appointed receiver have long been recognized by Oklahoma Courts. See *U.S. Nat. Bank v. National Bank of Guthrie,* 51 P. 119, 136-137 (Okla.Terr. 1897) and *Stanolind Crude Oil Purchasing Co. v. Busey,* 90 P.2d 876, 880 (Okla. 1939). These concepts are essential to protect the receiver and this Court's exclusive jurisdiction as further discussed in *State ex rel Ketchum v. District Court of Tulsa County*, 198 P. 480, 482-483 (Okla. 1921), wherein the Oklahoma Supreme Court adopted the reasoning and rule of law laid down by the Circuit Court of Appeals of the Eighth Circuit in the case of *Merritt et al. v.*

*American Steel Barge Co.*, 79 F. 228(8th Cir. 1897) that "when suits are brought to enforce liens against specific property to marshal assets, administer trusts, or liquidate insolvent estates, and in all other suits of a similar nature, where, in the progress of the litigation, the court may be compelled to assume the possession and control of specific personal or real property.  In cases of the latter kind, the rule is that the tribunal which first acquires jurisdiction of the cause by the issuance and service of process is entitled to retain it to the end, without interference or hindrance on the part of any other court. This rule, in its application to federal and state courts, being the outgrowth of necessity, is 'a principle of right and of law,' which leaves nothing to the discretion of a court, and may not be varied to suit the convenience of the litigants. *Gates v. Bucki,* 12 U. S. 69, 4 C. C. A. 116, and 53 Fed. 961; *Chittenden v. Brewster,* 2 Wall. 191; *Orton v. Smith,* 18 How. 263, 265; *Union Trust Co. v. Rockford, R. I. & L. R. Co.,* 6 Biss. 197, 24 Fed. Cas. 704; *Owens v. Railroad Co.,* 20 Fed. 10; *Union Mut. Life Ins. Co. v. University of Chicago,* 6 Fed. 443."

26. Based upon this time honored, long standing concept, this Court entered the Receiver Order to protect the Estate and all of Lees' assets which it holds by means of a Receiver from litigation and issued a blanket injunction enjoining and staying all litigation against Receiver and Lees.  This Court's findings of fact and conclusions of law set forth in the Receiver Order are incorporated herein by reference.

27. In the context of a sale, the Court clearly has the authority to enjoin all parties to this case from taking any action against the buyer of the Assets if the Court approves such a sale.  Indeed, anyone who comes to have notice of such an order is bound by the injunction based upon the Court *in rem* jurisdiction over the Assets obtained by holding such *in custodia legis.*

28. Movants request this Court to find that the Sale contemplated herein constitutes a

decretal sale subject to the "policy of the law to sustain judicial sales". Movants submit such policy should protect Buyer herein and requests this Court to order that any reversal of the Bid Procedures Order and the Sale Order on appeal will not vitiate the Sale nor divest Buyer of the title acquired pursuant to the Sale Order and the Asset Purchase Agreement. See *Threadgill v. Colcord,* 85 P. 703 (Okla. Terr. 1906).

29. Movants request this Court approve the sale of the Assets to Buyer free and clear of all liens, claims and encumbrances. To effectuate the conveyance of the Assets free and clear as stated above and to facilitate the implementation and effectiveness of the Sale, Movants request the Sale Order specifically state that the same shall be effective upon closing to remove any and all of liens, claims and encumbrances from the Assets and substitute the proceeds as collateral for such claims. Oklahoma statutory law authorizes a Receiver to make transfers of Assets pursuant to 12 Okla. Statues §1554; therefore, it is clear a Receiver has the authority to sell assets in this receivership.

30. To facilitate the Sale and to provide adequate assurances to Buyer, the Sale Order should provide an injunction in favor of Buyer and against all parties to this proceeding as well as non-parties with notice hereof enjoining any party hereto from asserting any lien, claim, encumbrance or any other form of legal or equitable right, remedy or claim against Buyer and all of the interest in the Assets acquired at the Sale. The entry of such an injunctive order is reasonable and necessary to protect Buyer from the assertion of any claim by any of Lees' creditors or other parties in interest. If such injunctive relief is not granted, then Buyer is at risk of a claim against the Assets acquired at the sale despite the fact that Buyer will have paid fair value for the Assets and the parties will have their full rights against the proceeds. To subject Buyer to such a risk is inequitable and

unfair and the presence of such possible claims will have a chilling effect upon the sale.

31. It is equally clear that a Receiver may conduct a sale of assets prior to the entry of a final judgment. One hundred twenty-eight (128) years ago, the United States Supreme Court addressed the concept of a Receiver selling assets subject to the receivership sale free and clear prior to entry of a final judgment in the case of *First National Bank of Cleveland v. Shedd*, 121 U. S. 74, 7 Sup. Ct. 807, 30 L. Ed. 877 (1887); wherein it was held that there is "no doubt" that a Court has the power to authorize a Receiver to sell property free and clear prior to an adjudication of the merits of a foreclosure case. Therefore, this Court has the authority to enter the proposed Sale Order approving the Sale at this point in this case.

32. Oklahoma case law incorporates and approves the process of a Receiver selling property prior to a judgment pursuant to an order of this Court as discussed in *Threadgill v. Colcord,* 85 P. 703 (Okla.Terr. 1906) beginning at page 705:

> The statutes are entirely silent as to the manner of the conduct of such sales, and we think that if the sale is conducted in the manner prescribed by the court in its decree, that the proceedings would be sufficient to give the purchaser a good title to the property.

and continuing at page 710:

> A purchaser, under a deed from a receiver, is not bound to examine all the proceedings in the case in which the receiver is appointed. It is sufficient for him to see that there is a suit in equity, or was one, in which the court appointed a receiver of property, that such receiver was authorized by the court to sell the property, that a sale was made under such authority, that the sale was confirmed by the court, and that the deed given by the receiver accurately recites the property or interests thus sold. A purchaser at a judicial sale is not bound to inquire whether any errors intervened in the action of the court, or irregularities were committed by the receiver in the sale. *Koontz v. Northern Bank*, 16 Wall. 196, 21 L. Ed. 465; *Grignon's Lessee v. Astor*, 2 How. 319, 11 L. Ed. 283; *Voorhees v. Bank of U. S.*, 10 Pet. 449, 9 L. Ed. 490. Even though the case in which the receiver was appointed might be subsequently reversed on appeal, such reversal would not affect the sale if the court had jurisdiction to

render the decree, and the fact that the plaintiff in the suit in which the receiver was appointed was himself the purchaser at the receiver's sale, would not alter the case.

33.     This Court clearly has the jurisdiction and authority to authorize and empower the Receiver to sell assets free and clear of liens, claims and encumbrances.  The United States Supreme Court approved this concept in *First National Bank of Cleveland v. Shedd*, supra, when it affirmed a lower court's order empowering a Receiver to "sell the mortgage property free of all liens, and to bring the proceeds into Court, to be distributed in accordance with the respective liens and priorities of the parties".  Further, there is no question this Court has the authority to order the sale of real property free and clear of liens in various situations, see 12 Okl.St.§§ 686, 1147.1 and 1513; 11 Okl.St.Ann. § 36-308.

34.     The terms of the sale pursuant to the Bid Procedures Order adequately protect all interests of all parties herein and are sufficient to justify this Court's approval of the sale free and clear thereby enabling Receiver to convey to Buyer free and clear title to the Assets to maximize the value recovered from the sale for the benefit of all parties.  It is axiomatic that no informed party would pay any significant value for the Assets unless they can acquire title free and clear of the numerous disputes, claims, liens and encumbrances surrounding the Assets in this case. Consequently, this Court should order the sale of the Assets be free and clear of all liens, claims and encumbrances with any such claims to attach to the Proceeds with the same priority and validity as such claims presently have against the Assets so that there is no prejudice to the legal position of any creditor or claimant.

35.     To protect Lees' equity of redemption pursuant to 42 O.S. §18, the Sale Order should provide that Lees has the right to redeem the Assets by paying the total amount due on the Plaintiff's claims in cash at any time prior to the entry of the Sale Order.  Such procedure protects Lees' right to

redeem the Assets by tendering money. The origin of the equity of redemption and the means by which such right is terminated in Oklahoma is the case of *Balduff v. Griswold*, 60 P. 223 (Okla.Terr. 1900), which cites as the origin of such concept the case of *Carr v. Carr*, 52 N.Y. 251 (1873), which in turn cites at page 258 the case of *Murray v. Walker*, 31 N.Y. 399 (1865) wherein at page 404 it was held that a debtor's equity of redemption in mortgaged assets is terminated when they have the "right to answer; and either contest the honesty of the loan, or tender the money and redeem". Movants request this Court to enter the Sale Order providing that the equity of redemption afforded to Lees shall be fully enforceable until entry of the Sale Order; and that upon the transfer of title to the Assets pursuant to the Asset Purchase Agreement and the Sale Order, that all rights of Lees in and to the Assets including any equity of redemption shall be finally and forever extinguished.

36.     Therefore, this Court should authorize and approve the sale and conveyance of the Assets by Receiver free and clear of liens, claims and encumbrances as requested herein. Receiver submits the sale represents a reasonable business decision in light of the circumstances and is in the best interest of the Estate and its creditors. Further, Receiver submits the sale presents the best opportunity to realize the maximum value for these properties and is necessary to preserve the value thereof.

37.     Receiver requests that the Sale Order provide that in the event hazardous substances or hazardous waste, as defined by any federal, state or local statute, law, ordinance, or regulation, are discovered on the Assets, whether installed, placed or disposed of by Receiver or a previous owner, Receiver shall have no obligation to perform or take any remedial measures related to the removal of such, hazardous substances or hazardous waste, including any required remediation in compliance with any federal, state or local environmental regulations.

**WHEREFORE**, premises considered, the Receiver, C. David Rhoades and Fifth Third Bank, requests the entry of an Order Sustaining this Motion of Receiver to Sale Assets and for such other and further relief as the Court deems just and proper.

**DATED** this 1st day of March, 2016.

        Respectfully Submitted:

        __/s/Mark A. Craige_____
        Mark A. Craige, OBA No. 1992

        -Of the Firm-

        CROWE & DUNLEVY, P.C.
        500 Kennedy Building
        321 South Boston Avenue
        Tulsa, Oklahoma 74103-3313
        918.592-9800 Telephone Number
        918.592.9801 Facsimile Number
        mark.craige@crowedunlevy.com

        and

        Kenneth J. Ottaviano
        William J. Dorsey
        Katten Muchin Rosenman, LLP
        525 West Monroe Street, Suite 1900
        Chicago, Illinois 60661
        312.902.5200 Telephone Number
        312.902.1061 Facsimile Number
        kenneth.ottaviano@kattenlaw.com
        william.dorsey@kattenlaw.com

        ***Attorneys for Fifth Third Bank, Plaintiff***

 

_____
C. David Rhoades, Receiver
401 South Boston, Suite 2200
Tulsa, Oklahoma 74103
cdrhoades@turnaroundpro.com

***Receiver, C. David Rhoades, ("Receiver")***

# CERTIFICATE OF SERVICE

I hereby certify that on the same date this document was filed, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants.

I hereby certify that on the same date, I served the same document by causing a true and correct copy of the above and foregoing document to be mailed by first class U.S. Mail with sufficient postage prepaid and affixed thereon to:

| | |
|---|---|
| The Apothecary Shoppe, LLC<br>c/o The Corporation Trust Company<br>Corporate Trust Center<br>1209 Orange Street<br>Wilmington, DE 19801 | Getman-Apothecary Shoppe, LLC<br>c/o The Corporation Trust Company<br>Corporate Trust Center<br>1209 Orange Street<br>Wilmington, DE 19801 |
| The Apothecary Shoppe of B.A. LLC<br>c/o The Corporation Trust Company<br>1209 Orange Street<br>Wilmington, DE 19801 | Lees Specialty Compounding Inc.<br>c/o The Corporation Trust Company<br>1209 Orange Street<br>Wilmington, DE 19801 |
| Lees Specialty Compounding LLC<br>c/o The Corporation Trust Company<br>1209 Orange Street<br>Wilmington, DE 19801 | Lees Specialty Compounding, LLC<br>Attn: D. J. Lees<br>6136 East 51st Street<br>Tulsa, OK 74135 |
| The Apothecary Shoppe LLC<br>Attn: D. J. Lees<br>6136 East 51st Street<br>Tulsa, OK 74135 | The Apothecary Shoppe of B.A., LLC<br>Attn: D. J. Lees<br>6136 East 51st Street<br>Tulsa, OK 74135 |
| Getman-Apothecary Shoppe LLC<br>Attn: D. J. Lees<br>6136 East 51st Street<br>Tulsa, OK 74135 | Lees Specialty Compounding Inc.<br>Attn: D. J. Lees<br>6136 East 51st Street<br>Tulsa, OK 74135 |
| Mosaic Capital Investors I, L.P.<br>c/o PHS Corporate Services, Inc. | Amerisourcebergen Drug Corporation<br>1300 Morris Drive |

| | |
|---|---|
| 1313 North Market Street, Suite 5100<br>Wilmington, DE 19801 | Chesterbrook, PA 19087 |
| Bellco Drug Corporation<br>1300 Morris Drive<br>Valley Forge, PA 19087 | GreatBanc Trust Company<br>Attn: John Marino<br>801 Warrenville Road, Suite 500<br>Lisle, IL 60532 |
| Pete Shuler<br>Crowe Horwath, LLP<br>10 West Broad Street, Suite 1700<br>Columbus, OH  43215-3454 | |

The undersigned further states that on the 1st day of March, 2016, he caused a true and correct copy of the above and foregoing pleading to be emailed to the following parties:

| | |
|---|---|
| Steve W. Soule<br>SSoule@HallEstill.com<br>Attorney for Defendants | Wallace Brockhoff<br>wbrockhoff@LATHROPGAGE.COM<br>Attorney for ESOP Trustee, 99% equity holder |
| Stephen Hetrick<br>Stephen Hetrick@mcafeetaft.com<br>Attorney for Lees Family | |

                                                                                                                                                                                                                          */s/Mark A. Craige*\
                                                                                                                                                                                                                         Mark A. Craige