## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) FIFTH THIRD BANK, an Ohio banking corporation, <br><br> Plaintiff, <br><br> v. <br><br> (1) LEES SPECIALTY COMPOUNDING, LLC, a Delaware limited liability company, (2) THE APOTHECARY SHOPPE, LLC, a Delaware limited liability company, (3) THE APOTHECARY SHOPPE OF B.A., LLC, a Delaware limited liability company, (4) GETMAN-APOTHECARY SHOPPE LLC, a Delaware limited liability company, and (5) LEES SPECIALTY COMPOUNDING, INC., Delaware corporation, <br><br> Defendants. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) Case No. 15-cv-00631-TCK-FHM <br> ) Judge: Hon. Terence C. Kern <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) |

## JOINT MOTION FOR ORDER ESTABLISHING
## BIDDING PROCEDURES, MANNER AND FORM
## OF NOTICE FOR SALE OF ASSETS HELD BY RECEIVER
## ("BID PROCEDURES MOTION")

Plaintiff Fifth Third Bank, an Ohio banking corporation ("*Fifth Third*" or "*Plaintiff*"), by its undersigned attorneys, and C. David Rhoades, the duly appointed, qualified and acting receiver ("*Receiver*")[1] of Lees Specialty Compounding, LLC, The Apothecary Shoppe, LLC, The Apothecary Shoppe of B.A., LLC, Getman-Apothecary Shoppe, LLC and Lees Specialty Compounding, Inc. (collectively, "*Lees*"), pursuant to *§ 1554, Tit. 12, Okla.Stat.1910*, hereby jointly move the Court through this motion (this "*Bid Procedures Motion*") to enter an order[2] establishing certain bidding procedures as set forth herein (the "*Bid Procedures*") for the proposed sale of the Assets (as defined below). In support of this Bid Procedures Motion,

---

[1] The Plaintiff and the Receiver as collectively referred to in this Motion as the "Movants."
[2] A proposed order will be submitted to the Court and circulated in advance of the hearing on this Bid Procedures Motion.

Movants present the following:

## Introduction

1.      Movants are filing this Bid Procedures Motion in conjunction with and as an integral part of a separate sale motion that Movants have filed contemporaneously herewith and wherein Movants seek authority to sell the Assets pursuant to *§ 1554, Tit. 12, Okla.Stat.1910* (the "*Sale Motion*").

2.      Because of the relatedness and interdependency of this Bid Procedures Motion and the Sale Motion, Movants outline herein the facts related to all of these matters.

## Jurisdiction

3.      This Court has jurisdiction to hear this Bid Procedures Motion and venue is proper before this Court.

## Background

4.      On November 3, 2015, Fifth Third commenced the above captioned action following Lees' breach of its credit and guaranty agreements with Plaintiff.  Plaintiff sought and obtained an Order of this Court directing the appointment of Receiver on November 16, 2015 (the "*Receiver Order*").  Receiver was appointed over Lees' property and business entities and given management powers vis-à-vis over Lees and its business (collectively, the "*Estate*").

5.      Since his appointment, Receiver has operated Lees' Estate business, including the following stores: The Apothecary Shoppe, LLC located at 6136 East 51st Street, Tulsa, Oklahoma; The Apothecary Shoppe of B.A., LLC located at 510 North Elm Place, Broken Arrow, Oklahoma; and the Getman-Apothecary Shoppe, LLC located at 1725 East 19th Street, Tulsa Oklahoma (collectively, the "*Stores*").

6.      Receiver has marketed Lees' business and property for sale for the benefit of the Estate.  Receiver received an offer from Marcain Properties, LLC ("*Stalking Horse Bidder*") to purchase certain of Lees' assets for $2,500,000 (the "*Purchase Price*") as set forth in that certain

Asset Purchase Agreement executed by Stalking Horse Bidder and attached hereto as Exhibit "1" (the "*Asset Purchase Agreement*").   The transaction contemplated by the Asset Purchase Agreement is referred to as the "*Sale*" herein.   The Asset Purchase Agreement was negotiated at arms' length between Receiver and Stalking Horse Bidder.

7.     The assets Stalking Horse Bidder seeks to purchase are defined as "Assets" in the Asset Purchase Agreement as well as herein and include: inventory, chattels, equipment, furniture, trade fixtures, machinery and other tangible personal property in the Stores, contract rights, leases (which may be rejected concurrently with the Sale or at some time in the future) for the Stores, restrictive covenant rights, customer lists, good will, trade names, phone numbers, post office box numbers, website with URL and bank accounts.  The definition of "*Assets*" in the Asset Purchase Agreement is incorporated herein.   Stalking Horse Bidder further seeks assignment of certain contracts, unexpired leases and Restrictive Covenants to it in connection with the Sale.  Such contracts and unexpired leases are defined as the "*Assigned Contracts*" in the Asset Purchase Agreement and such restrictive covenants are defined as "Restrictive Covenants" in the Asset Purchase Agreement and such definitions are incorporated herein.

8.     The Assets are subject to Plaintiff's security interest granted in the credit agreements and are believed to be otherwise unencumbered.  Plaintiff consented to the Sale on the terms stated herein and in the Asset Purchase Agreement.

9.     Receiver has negotiated the terms of the Asset Purchase Agreement to induce Stalking Horse Bidder to make a firm agreement to purchase the Assets and to maximize the possibility of other potential bidders making competing bids.  Accordingly, Movants request authority for the Receiver to consummate the entry into the Asset Purchase Agreement and approval of a competitive bidding process that includes buyer protection provisions and other specific bidding procedures typical for transactions of this nature, all of which are designed to ensure a fair and efficient process that will facilitate the submission of easily comparable bids,

while at the same time providing Stalking Horse Bidder with reasonable protections for assuming the role of a pre-qualified cash purchaser of the Assets.

**Bid Procedures**

10.     Receiver, Stalking Horse Bidder and Plaintiff have agreed upon the following bid procedures for the sale of the Assets:

a.     Upon its execution of the Asset Purchase Agreement, Stalking Horse Bidder provided Receiver an earnest money deposit in the amount of Fifty Thousand and No/100 Dollars ($50,000.00) (the "*Earnest Money*"). The Earnest Money was deposited as "good faith money" and is held by Receiver in escrow in a federally insured financial institution. The Earnest Money is non-refundable, except as otherwise provided in the Asset Purchase Agreement.

b.     Prior to the close of the Auction (as defined below), Receiver shall continue to market the Assets for sale.

c.     At the hearing on this Bid Procedures Motion, Movants shall request this Court to schedule a hearing on the approval of the sale of the Assets (the "*Sale Hearing*") and the deadline prior to the Sale Hearing for any person to file an objection to the sale of the Assets, including any claim to ownership of the Assets (the "*Sale Objection Deadline*").

d.     Two (2) Business Days prior to the Sale Hearing, Receiver shall hold a meeting (the "Auction") for any and all interested purchasers of the Assets at a place in Tulsa, Oklahoma, that will be announced to all interested parties and will be advertised two times in the daily newspapers in at least Fayetteville, Arkansas, Kansas City, Kansas, Kansas City, Missouri, Tulsa and Oklahoma City, at least two (2) weeks before the Auction.

e.     At the Auction, Stalking Horse Bidder shall be deemed to have tendered its bid to purchase the Assets in the amount of the Purchase Price and as set forth in the Asset Purchase Agreement and Receiver shall announce such bid to any other bidders.

f.     Any other party interested in submitting a competing bid for the Assets must submit the following to Receiver prior to the Auction: (i) a commitment letter to purchase the Assets on terms and conditions no less favorable to Receiver than set forth in the Asset Purchase Agreement, (ii) a synopsis of the qualifications to be able to be licensed by the Oklahoma Pharmacy Board and other regulatory agencies, and (iii) proof of the party's financial wherewithal to consummate the sale. Receiver shall determine, in his sole discretion, whether a competing bid meets the foregoing requirements and, if Receiver determines it meets the requirements, the bid shall be deemed a "*Qualified Bid*".

g.     At the Auction, following the tender of Stalking Horse Bidder's bid set forth in the Asset Purchase Agreement, any initial competing Qualified Bid must be in an amount at least $100,000 higher than the Purchase Price. Following the submission of any such overbid, competing Qualified Bids may be made in increments of no less than $10,000 per additional bid. Stalking Horse Bidder and any person submitting a Qualified Bid may make any

such additional overbids.

h.     Receiver shall determine the highest and/or best Qualified Bid at the Auction and the person making such bid shall be deemed the prevailing bidder (the "*Prevailing Bidder*").  The second highest and best bidder, as determined by Receiver, will be deemed the back-up bidder (the "*Back-Up Bidder*").

i.     In the event the Prevailing Bidder is not Stalking Horse Bidder and/or a party other than Stalking Horse Bidder is determined the Back-Up Bidder, such Prevailing Bidder and Back-Up Bidder, as applicable, shall each pay Receiver a Fifty Thousand and No/100 Dollars ($50,000) earnest money deposit (a "*Bid Deposit*") within twenty-four (24) hours of the close of the Auction and, in no event, no later than the start of the Sale Hearing.

j.     In the event that Stalking Horse Bidder is not the Prevailing Bidder or the Back-Up Bidder, Receiver shall: (i) at the time of closing on any sale of the Assets (an "*Alternative Transaction*") pay Stalking Horse Bidder the amount of Forty Thousand and No/100 Dollars ($40,000), which shall serve as a termination fee for the Asset Purchase Agreement (the "*Termination Fee*") and (ii) return the Earnest Money to Stalking Horse Bidder at the closing of the Alternative Transaction.

k.     In the event that Stalking Horse Bidder is the Back-Up Bidder, Receiver shall pay Stalking Horse Bidder the Earnest Money deposit and the Termination Fee at the closing of an Alternative Transaction.

l.     Upon payment of the Termination Fee and a return of the Earnest Money, Receiver and Stalking Horse Bidder shall be relieved of any further liabilities and obligations under the Asset Purchase Agreement.

m.     Receiver shall not pay the Termination Fee to any bidder except Stalking Horse Bidder.  No other bidder shall be eligible for the Termination Fee.

n.     For a Qualified Bidder that is deemed the Prevailing Bidder, its Bid Deposit shall be credited to such Qualified Bidder's payment of its purchase price for the Assets. In the event a Qualified Bidder is deemed the Back-Up Bidder and Receiver closes the sale to the Prevailing Bidder, Receiver shall pay such Back-Up Bidder its Bid Deposit at the closing of the sale to the Prevailing Bidder.

o.     Subject to the terms of the Asset Purchase Agreement, closing of the Sale to the Prevailing Bidder shall be held at the offices of Turnaround Professionals, 401 South Boston, Suite 2200, Tulsa, Oklahoma 74103 or at such other location at such date and time as Receiver may select; provided Receiver shall give the Prevailing Bidder and Back-Up Bidder at least five (5) Business Days' advance notice thereof.  Closing with the Prevailing Bidder shall occur no later than ten (10) calendar days from the date the order approving the Sale is entered by the Court, unless extended by written agreement between Receiver and the Prevailing Bidder.

p.     In the event the sale to the Prevailing Bidder does not timely close in accordance with the forgoing paragraph, the closing of the sale to the Back-Up Bidder shall be held at the offices of Turnaround Professionals, 401 South Boston, Suite 2200, Tulsa, Oklahoma 74103 or at such other location at such date and time as Receiver may select; provided Receiver

shall give the Back-Up Bidder at least five (5) Business Days' advance notice thereof.  Closing with the Back-Up Bidder shall occur no later than ten (20) calendar days from the date the order approving the Sale is entered by the Court, unless extended by written agreement between Receiver and the Back-Up Bidder.

11.     In addition, Movants propose to provide notice of the Bid Procedures as follows. Within five business days after entry of an order approving this Bid Procedures Motion (the "*Procedures Order*"), Receiver shall serve a copy of the Procedures Order, along with a copy of the Sale Motion, on (i) all parties who have expressed an interest in acquiring the Assets, (ii) all parties who have asserted an ownership interest in the Assets and (iii) all attorneys who have entered an appearance and requested notice in this case.

## Legal Authority

12.     Movants seek entry of an order approving the Bid Procedures, granting Receiver authority to enter into the Asset Purchase Agreement with Stalking Horse Bidder, approving Receiver's proposed procedures for notice of the Procedures Order and scheduling the Sale Hearing.

13.     The Bid Procedures serve the interests of the Estate and are fair, reasonable and productive because they will permit Receiver to conduct an orderly sale and obtain the best possible price on acceptable terms for the Assets.

14.     The Bid Procedures have been carefully crafted to ensure that maximum return is achieved from the sale of the Assets.  The Bid Procedures will also ensure that all bids will be comparable by requiring all bids to be on substantially the same terms and conditions. If competing bidders appear, Receiver and the Court will need to determine which bid is the highest and/or best.   The comparability requirements of the Bid Procedures will make it possible to accomplish this task.

15.     The Bid Procedures require that potential bidders demonstrate their capacity to complete the transaction.   It would be a serious loss to the Estate if Receiver surrendered its

opportunity to sell the Assets to Stalking Horse Bidder only to discover that the Prevailing Bidder is incapable of consummating the transaction.

16.     The payment of termination fees as part of a sale process is a generally accepted practice of sales by entities in bankruptcy proceedings.   Movants submit the same considerations are present in this case as are present in most bankruptcy cases when sales of assets are being considered.   Since Counsel for Plaintiff found not one reported case on the subject, bankruptcy case law has been cited.   The use of stalking horse offers and termination fees is widely accepted practice in bankruptcy court sales.   Termination fees encourage an initial purchaser to invest the time, effort and money necessary to consummate the purchase of a receiver's assets, despite the possibility that such purchaser may not ultimately acquire the property. As such, they are important tools to be used to encourage bidding.   The determination of whether a termination fee should be allowed is made based on whether the fees are necessary to preserve the value of the estate.    *In re O'Brien Environmental Energy, Inc.*, 181 F.3d 527, 534 (3d Cir. 1999).    The considerations that underlie the receiver's business judgment to pay the termination fee are relevant to this Court's determination on the request.   *Id.*   Indeed, many Courts have evaluated termination fee arrangements under the business judgment rule standard.    *Cottle vs. Storer Communications, Inc.*, 849 F.2d 570 (11th Cir. 1988); *In re Integrated Resources, Inc.*, 147 B.R. 650, 657 (S.D.N.Y. 1992), *appeal dismissed* by 3 F.3d 49 (2d Cir. 1993).

17.     The business judgment rule standard is applied to validate a receiver's decision to enter into a termination fee to the extent the following three questions are answered in the negative:

(a)     is the relationship of the parties who negotiated a breakup fee tainted by self-dealing or manipulation;

(b)     does the termination fee hamper bidding; and

(c)     is the amount of the termination fee unreasonable relative to the proposed purchase price?

*Integrated Resources*, 147 B.R. at 657.   In order to determine whether a termination fee encourages rather than hampers bidding, courts have determined whether an agreement to pay such a fee:

(i)     attracts or retains a potentially successful bid;

(ii)    establishes a bid standard or minimum for other bidders to follow; and/or

(iii)   attracts additional bidders.

*Id*. at 662.   A termination fee should constitute a fair and reasonable percentage of the proposed purchase price, and should be reasonably related to the prospective purchaser's risk, effort and expenses.   *Id*. at 662; see also *In re 995 Fifth Ave. Assoc., L.P.,* 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989).

18.     Application of the business judgment test, as set forth above, illustrates that Receiver should be authorized to pay the Termination Fee in connection with the sale of the Assets.  The payment of the Termination Fee is critical to the continuing obligation of Stalking Horse Bidder to purchase the Assets.   Without provision for the Termination Fee, in the event a third party comes forward subsequent to the filing of the Sale Motion and offers more for the Assets, Stalking Horse Bidder would not have agreed to enter into the Sale Agreement and invest a substantial amount of money and time in evaluating the Assets.  The proposed Termination Fee was in fact necessary to secure the firm agreement from Stalking Horse Bidder to purchase the Assets.   The Termination Fee clearly should be approved under the standards articulated by the Third Circuit Court of Appeals in its  decision of *In re O'Brien Environmental Energy, Inc.,* 181 F.3d 527 (3d Cir. 1999).

19.     The Termination Fee results from extended good faith, arms-length negotiations between Receiver and Stalking Horse Bidder.  The Termination Fee is fair and reasonable in

amount, particularly in view of Stalking Horse Bidder's agreement to serve as a "safety net" for the bidding process.

**WHEREFORE**, Movants pray that this Court:

A.      Find that notice of this Bid Procedures Motion is adequate under the circumstances and that any further notice of this Bid Procedures Motion is excused for good cause shown;

B.      Schedule a hearing as soon as possible, to consider the Bid Procedures set forth in this Bid Procedures Motion;

C.      Enter an order approving the Bid Procedures and authorizing Receiver to enter into the Asset Purchase Agreement;

D.      Provided that the Court approves this Bid Procedures Motion, schedule the Sale Hearing no later than May 6, 2016;

E.      Authorize Receiver to give notice of the Sale Motion and Procedures Order in accordance with this Bid Procedures Motion;

F.      Require that any and all objections to the Sale, including any claims to ownership of the Assets, be filed and served via email (in addition to regular mail) upon Receiver, counsel for Plaintiff, and counsel for Stalking Horse Bidder on or before fifteen (15) days before the Sale Hearing; and

G.      Grant Movants such additional relief as this Court deems equitable and just.

**DATED** this 1st day of March, 2016.

Respectfully Submitted:

   */s/Mark A. Craige*
Mark A. Craige, OBA No. 1992

-Of the Firm-

CROWE & DUNLEVY, P.C.
500 Kennedy Building

321 South Boston Avenue
Tulsa, Oklahoma 74103-3313
918.592.9800 Telephone Number
918.592.9801 Facsimile Number
mark.craige@crowedunlevy.com

and

Kenneth J. Ottaviano
William J. Dorsey
Katten Muchin Rosenman, LLP
525 West Monroe Street, Suite 1900
Chicago, Illinois 60661
312.902.5200 Telephone Number
312.902.1061 Facsimile Number
kenneth.ottaviano@kattenlaw.com
william.dorsey@kattenlaw.com

**_Attorneys for Fifth Third Bank, Plaintiff_**

_____

C. David Rhoades, Receiver
401 South Boston, Suite 2200
Tulsa, Oklahoma 74103
cdrhoades@turnaroundpro.com

**_Receiver, C. David Rhoades, ("Receiver")_**

## CERTIFICATE OF SERVICE

I hereby certify that on the same date this document was filed, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants.

I hereby certify that on the same date, I served the same document by causing a true and correct copy of the above and foregoing document to be mailed by first class U.S. Mail with sufficient postage prepaid and affixed thereon to:

The Apothecary Shoppe, LLC
c/o The Corporation Trust Company
Corporate Trust Center
1209 Orange Street
Wilmington, DE 19801

Getman-Apothecary Shoppe, LLC
c/o The Corporation Trust Company
Corporate Trust Center
1209 Orange Street
Wilmington, DE 19801

The Apothecary Shoppe of B.A. LLC
c/o The Corporation Trust Company
1209 Orange Street
Wilmington, DE 19801

Lees Specialty Compounding Inc.
c/o The Corporation Trust Company
1209 Orange Street
Wilmington, DE 19801

Lees Specialty Compounding LLC
c/o The Corporation Trust Company
1209 Orange Street
Wilmington, DE 19801

Lees Specialty Compounding, LLC
Attn: D. J. Lees
6136 East 51st Street
Tulsa, OK 74135

The Apothecary Shoppe LLC
Attn: D. J. Lees
6136 East 51st Street
Tulsa, OK 74135

The Apothecary Shoppe of B.A., LLC
Attn: D. J. Lees
6136 East 51st Street
Tulsa, OK 74135

Getman-Apothecary Shoppe LLC
Attn: D. J. Lees
6136 East 51st Street
Tulsa, OK 74135

Lees Specialty Compounding Inc.
Attn: D. J. Lees
6136 East 51st Street
Tulsa, OK 74135

Mosaic Capital Investors I, L.P.
c/o PHS Corporate Services, Inc.
1313 North Market Street, Suite 5100
Wilmington, DE 19801

Amerisourcebergen Drug Corporation
1300 Morris Drive
Chesterbrook, PA 19087

Bellco Drug Corporation
1300 Morris Drive
Valley Forge, PA 19087

GreatBanc Trust Company
Attn: John Marino
801 Warrenville Road, Suite 500
Lisle, IL 60532

Pete Shuler
Crowe Horwath, LLP
10 West Broad Street, Suite 1700
Columbus, OH  43215-3454

The undersigned further states that on the 1st day of March, 2016, he caused a true and

correct copy of the above and foregoing pleading to be emailed to the following parties:

Steve W. Soule
SSoule@HallEstill.com
Attorney for Defendants

Wallace Brockhoff
wbrockhoff@LATHROPGAGE.COM
Attorney for ESOP Trustee, 99% equity
holder

Stephen Hetrick
Stephen Hetrick@mcafeetaft.com
Attorney for Lees Family

_/s/Mark A. Craige_____
Mark A. Craige