## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| (1) FIFTH THIRD BANK, an Ohio banking corporation, <br><br> Plaintiff, <br><br> v. <br><br> (1) LEES SPECIALTY COMPOUNDING, LLC, a Delaware limited liability company, (2) THE APOTHECARY SHOPPE, LLC, a Delaware limited liability company, (3) THE APOTHECARY SHOPPE OF B.A., LLC, a Delaware limited liability company, (4) GETMAN-APOTHECARY SHOPPE LLC, a Delaware limited liability company, and (5) LEES SPECIALTY COMPOUNDING, INC., Delaware corporation, <br><br> Defendants. | Case No. 15-cv-00631-TCK-FHM <br> Judge: Hon. Terence C. Kern <br> Magistrate: Frank H. McCarthy |

## ORDER ESTABLISHING
## BIDDING PROCEDURES, MANNER AND FORM
## OF NOTICE FOR SALE OF ASSETS HELD BY RECEIVER
## ("PROCEDURES ORDER")

Now on this 18th day of March, 2016, there came before me the undersigned Judge of the

United States District Court for the Northern District of Oklahoma on the motion filed on March 1,

2016 (the "*Bid Procedures Motion*") by Receiver[1] of Lees pursuant to *§ 1554, Tit. 12,*

*Okla.Stat.1910*, wherein Receiver moved the Court to enter this Order establishing the Bid

Procedures for the sale of the Assets, granting Receiver authority to enter into the Asset Purchase

Agreement with Stalking Horse Bidder, approving Receiver's proposed procedures for notice of this

order and scheduling the Sale Hearing.[2]  The Court having heard the matter in open court finds the

---

[1] All capitalized terms used herein and not otherwise defined shall have the meaning given to them in the Bid Procedures Motion.

[2] The Court notes that simultaneously with the filing of the Bid Procedures Motion, Receiver also filed the Sale Motion.

Bid Procedures Motion should be granted and orders as follows (this "*Procedures Order*"):

## Jurisdiction

1.      This Court had jurisdiction to hear the Bid Procedures Motion and has jurisdiction to enter this Procedures Order.  Venue is proper before this Court.

## Findings Of Fact

2.      Based upon the presentations at the hearing, the Court makes the following findings of fact.

3.      On November 3, 2015, Plaintiff commenced the above captioned action following Lees breach of its credit and guaranty agreements with Plaintiff.  Plaintiff sought and obtained the Receiver Order from this Court on November 16, 2015.  Receiver was appointed over the Estate.

4.      Since his appointment, Receiver has operated Lees' business, including the Stores.

5.      Receiver has marketed Lees' business and property for sale for the benefit of the Estate.  Receiver received an offer from Stalking Horse Bidder to purchase the Assets for the Purchase Price as set forth in the Asset Purchase Agreement.  The Asset Purchase Agreement was negotiated at arms' length between Receiver and Stalking Horse Bidder.

6.      With its purchase of the Assets, Stalking Horse Bidder further seeks assignment of the Assigned Contracts.

7.      The Assets are subject to Plaintiff's first priority security interest granted in the credit agreements and are otherwise unencumbered.  Plaintiff consented to the Sale on the terms stated in the Bid Procedures Motion and in the Asset Purchase Agreement.

8.      Receiver negotiated the terms of the Asset Purchase Agreement to induce Stalking Horse Bidder to make a firm agreement to purchase the Assets and to maximize the possibility of other potential bidders making competing bids.

9.      Accordingly, the Court approves the Bid Procedures, all of which are designed to ensure a fair and efficient process that will facilitate the submission of easily comparable bids while at the same time providing Stalking Horse Bidder with reasonable protections for assuming the role of a pre-qualified cash purchaser of the Assets.

## Approval of Asset Purchase Agreement

10.     The Court finds the Asset Purchase Agreement was negotiated at arm's length between Receiver and Stalking Horse Bidder.  The form and content of the Asset Purchase Agreement is approved with the express reservation that the Sale contemplated in the Asset Purchase Agreement is subject to approval at the Sale Hearing.

## Bid Procedures

11.     The Court finds that the Bid Procedures, as set forth below, are fair and reasonable, and are hereby are approved.

a.      Upon its execution of the Asset Purchase Agreement, Stalking Horse Bidder provided Receiver the Earnest Money. The Earnest Money was deposited as "good faith money" and is held by Receiver in escrow in a federally insured financial institution.  The Earnest Money is non-refundable, except as otherwise provided in the Asset Purchase Agreement.

b.      Prior to the close of the Auction (as defined below), Receiver shall continue to market the Assets for sale.

c.      On April 13, 2016, Receiver shall hold the Auction for any and all interested purchasers of the Assets at a place in Tulsa, Oklahoma, that will be announced to all interested parties and will be advertised two times in the daily newspapers in at least Dallas, Texas; Fayetteville and Little Rock, Arkansas; Kansas City and Wichita, Kansas; and Kansas City and Joplin, Missouri; Tulsa and Oklahoma City, at least two (2) weeks before the Auction.

d.      At the Auction, Stalking Horse Bidder shall be deemed to have tendered its bid to purchase the Assets in the amount of the Purchase Price and as set forth in the Asset Purchase Agreement and Receiver shall announce such bid to any other bidders.

e.      Any other party interested in submitting a competing bid for the Assets must submit the following to Receiver prior to the Auction: (i) a commitment letter to purchase the Assets on terms and conditions no less favorable to Receiver than set forth in the Asset Purchase Agreement plus an increment as outlined in the PSA and (ii) a synopsis of the qualifications to be able to be licensed by the Oklahoma Pharmacy Board and other regulatory agencies, and (iii) proof

of the party's financial wherewithal to consummate the sale.  Receiver shall determine, in its sole discretion, whether a competing bid meets the foregoing requirements and, if Receiver determines it meets the requirements, the bid shall be deemed a "*Qualified Bid*".

      f.      At the Auction, following the tender of Stalking Horse Bidder's bid set forth in the Asset Purchase Agreement, any initial competing Qualified Bid must be in an amount at least $100,000 higher than the Purchase Price.  Following the submission of any such overbid, competing Qualified Bids may be made in increments of no less than $10,000 per additional bid.  Stalking Horse Bidder and any person submitting a Qualified Bid may make any such additional overbids.

      g.      Receiver shall determine the highest and/or best Qualified Bid at the Auction and the person making such bid shall be deemed the prevailing bidder (the "*Prevailing Bidder*"). The second highest and best bidder, as determined by Receiver, will be deemed the back-up bidder (the "*Back-Up Bidder*").

      h.      In the event the Prevailing Bidder is not Stalking Horse Bidder and/or a party other than Stalking Horse Bidder is determined the Back-Up Bidder, such Prevailing Bidder and Back-Up Bidder, as applicable, shall each pay Receiver a Fifty Thousand and No/100 Dollars ($50,000) earnest money deposit (a "*Bid Deposit*") within twenty-four (24) hours of the close of the Auction and, in no event, no later than the start of the Sale Hearing.

      i.      In the event that Stalking Horse Bidder is not the Prevailing Bidder or the Back-Up Bidder, Receiver shall: (i) at the time of closing on any sale of the Assets (an "*Alternative Transaction*") pay Stalking Horse Bidder the amount of Forty Thousand and No/100 Dollars ($40,000), which shall serve as a termination fee for the Asset Purchase Agreement (the "*Termination Fee*") and (ii) return the Earnest Money to Stalking Horse Bidder at the closing of the Alternative Transaction.

      j.      In the event that Stalking Horse Bidder is the Back-Up Bidder, Receiver shall pay Stalking Horse Bidder the Earnest Money deposit and the Termination Fee at the closing of an Alternative Transaction.

      k.      Upon payment of the Termination Fee and a return of the Earnest Money, Receiver and Stalking Horse Bidder shall be relieved of any further liabilities and obligations under the Asset Purchase Agreement.

      l.      Receiver shall not pay the Termination Fee to any bidder except Stalking Horse Bidder.  No other bidder shall be eligible for the Termination Fee.

      m.      For a Qualified Bidder that is deemed the Prevailing Bidder, its Bid Deposit shall be credited to such Qualified Bidder's payment of its purchase price for the Assets.  In the event a Qualified Bidder is deemed the Back-Up Bidder and Receiver closes the sale to the Prevailing Bidder, Receiver shall pay such Back-Up Bidder its Bid Deposit at the closing of the sale to the Prevailing Bidder.

      n.      Subject to the terms of the Asset Purchase Agreement, closing of the Sale to the Prevailing Bidder shall be held at the offices of Turnaround Professionals, 401

South Boston, Suite 2200, Tulsa, Oklahoma 74103 or at such other location at such date and time as Receiver may select; provided Receiver shall give the Prevailing Bidder at least five (5) Business days' advance notice thereof. Closing shall occur no later than ten (10) days from the date the order approving the Sale is entered by the Court, unless extended by written agreement between Receiver and the Prevailing Bidder.

o.      In the event the sale to the Prevailing Bidder does not timely close in accordance with the forgoing paragraph, the closing of the sale to the Back-Up Bidder shall be held at the offices of Turnaround Professionals, 401 South Boston, Suite 2200, Tulsa, Oklahoma 74103 or at such other location at such date and time as Receiver may select; provided Receiver shall give the Back-Up Bidder at least five (5) Business days' advance notice thereof. Closing with the Back-Up Bidder shall occur no later than ten (10) days from the date the order approving the Sale is entered by the Court, unless extended by written agreement between Receiver and the Back-Up Bidder.

12.      The Court finds that the foregoing bidding procedures provide a fair and reasonable means of insuring that the Assets are transferred for the highest and best terms attainable, and that such are hereby approved by this Court.

13.      The Court shall hold the Sale Hearing on April 19, 2016, at 10:00 a.m. (CDT).

14.      Within five business days after entry of this Procedures Order, Receiver shall serve a copy of this Procedures Order, along with a copy of the Sale Motion, on (i) all parties who have expressed, in a writing addressed to Receiver, an interest in acquiring the Assets and (ii) all attorneys who have entered an appearance and requested notice in this case.

15.      All objections to the Sale Motion, if any, shall be filed and served via facsimile (in addition to regular mail) upon Receiver, counsel for Plaintiff, and counsel for Stalking Horse Bidder on or before April 15, 2016.

## Conclusions of Law

16.      The Court adopts the legal authorities set forth in the Bid Procedures Motion as its conclusions of law for purposes of this Procedures Order.

17.      Upon approval of the Sale Motion, Receiver is authorized to assign the Assigned Contracts as part of the Sale.

18.      The Sale is approved as is contemplated under 12 O.S. §1554.

**IT IS SO ORDERED** this 21st day of March, 2016.

FRANK H. McCARTHY
UNITED STATES MAGISTRATE JUDGE

Submitted by:

   */s/Mark A. Craige*
Mark A. Craige, OBA No. 1992
Crowe & Dunlevy, P.C.
500 Kennedy Building
321 South Boston Avenue
Tulsa, Oklahoma 74103-3313
918.592.9800 Telephone Number
918.592.9801 Facsimile Number
mark.craige@crowedunlevy.com

and

Kenneth J. Ottaviano
William J. Dorsey
Katten Muchin Rosenman LLP
525 West Monroe Street, Suite 1900
Chicago, Illinois 60661
312.902.5200 Telephone Number
312.902.1061 Facsimile Number
kenneth.ottaviano@kattenlaw.com
william.dorsey@kattenlaw.com

*Attorneys for Fifth Third Bank*


_____
C. David Rhoades, Receiver