**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA**

(1) FIFTH THIRD BANK, an Ohio banking corporation,

    Plaintiff,

v.

(1) LEES SPECIALTY COMPOUNDING, LLC, a Delaware limited liability company,
(2) THE APOTHECARY SHOPPE, LLC, a Delaware limited liability company,
(3) THE APOTHECARY SHOPPE OF B.A., LLC, a Delaware limited liability company,
(4) GETMAN-APOTHECARY SHOPPE, LLC, a Delaware limited liability company, and
(5) LEES SPECIALTY COMPOUNDING, INC., a Delaware corporation,

    Defendants.

Case No. 15-cv-631-TCK-FHM

## OBJECTION TO SALE MOTION

Plaintiff and the Receiver filed their Joint Motion for Authority to Sell Assets to Stalking Horse Bidder Subject to Higher Offers and Notice to File Objections on March 1, 2016 [Dkt. No. 27] (the "Sale Motion"). The "Lees Parties"[1] submit the following objection to the Sale Motion. The Lees Parties object to (1) the attempt to assign certain restrictive covenants without requiring assumption of liabilities contained in the same contracts and (2) the attempt

---

[1] The "Lees Parties" as defined in the Motion of Lees Parties for Limited Intervention filed on March 11, 2016 [Dkt. No. 35] include the following persons and entities: (1) LJS Properties, LLC, (2) Alyssa M. Sanders, (3) Kasey D. Jackson, (4) Deril J. Lees, Jr., (5) Deril J. Lees, (6) Robbin G. Lees, (7) the Robbin G. Lees Amended and Restated Revocable Living Trust, (8) the Deril J. Lees Amended and Restated Revocable Living Trust, (9) the KDJ Family Trust for Parents, (10) the Kasey Diane Jackson Grantor Retained Annuity Trust, (11) the Kasey Diane Jackson Family Trust, (12) the Deril James Lees, Jr. Grantor Retained Annuity Trust, (13) the DJL Family Trust for Parents, (14) The Deril James Lees, Jr. Family Trust, (15) the AMS Family Trust for Parents, and (16) the Alyssa Marie Sanders Grantor Retained Annuity Trust. At this time, no ruling has been issued on the motion to intervene. However, at the hearing held in this matter on March 18, 2016, both the Receiver and Plaintiff acknowledged in open court that the Lees Parties have standing to file this Objection to the Sale Motion.

to sell certain assets which do not belong to the Receivership but are instead the property of a landlord under two leases to two named Defendants.

The Lees Parties' interest in this case arises out of the sale on December 20, 2013, of a compounding pharmacy business known as "The Apothecary Shoppe." The sale was structured as a sale of the membership interest in three limited liability companies, The Apothecary Shoppe, LLC, The Apothecary Shoppe of B.A., LLC, and Getman-Apothecary Shoppe, LLC, which owned and operated the business. The Lees Parties were the direct or indirect owners of those limited liability companies.

The main agreements involved in the sale were two similar "Membership Interest Purchase Agreements," each of which was over sixty pages long (the "MIPAs"). However, the MIPAs were not the only operative documents. Instead, there were numerous "Ancillary Agreements" entered into as a part of the same transaction. Each of the MIPAs contained an integration clause specifically providing that it, each of the Ancillary Agreements, and all other documents, schedules, and exhibits together "constitute the final agreement between the parties."

The total purchase price paid under both MIPAs was to be slightly less than $27,000,000.00, which was to be paid by a combination of cash at closing and notes. Over one-fourth of the purchase price, $7,000,000.00, which was to be paid under what were called the "Seller Notes" and the "Seller Subordinated Note," has not been paid and, due to the appointment of the Receiver in this case, is in default. Both the Seller Note and the Seller Subordinated Note were Ancillary Agreements under the MIPAs. As the Sale Motion contemplates a sale of all of the assets of The Apothecary Shoppe business for $2,500,000.00, it is clear that the Seller Notes and the Seller Subordinate Note will never be paid.

Two additional Ancillary Agreements are important to this objection. These were two separate but essentially identical Lease Agreements between LJS Properties, LLC, and The Apothecary Shoppe, LLC, and The Apothecary Shoppe of B.A., LLC, for the store locations at 6136 E. 51st Street in Tulsa and 510 N. Elm Place in Broken Arrow, respectively. The Lease Agreements contain identical provisions concerning removal of property at the end of the term. Several of the items listed on Exhibit B to the sale motion do not belong to the Defendants, but are instead fixtures which are a part of the leased real estate and thus remain the property of LJS Properties.[2]

**I.     Plaintiff and the Receiver will not be able to Present Clear and Convincing Evidence on each of the Requirements for an Injunction.**

The Sale Motion seeks an injunction from this Court. The injunction would bar the Lees Parties from asserting their claim to the assets which don't belong to the Receivership Estate. The proposed Asset Purchase Agreement also purports to assign the Restrictive Covenants contained in the MIPAs under which the Lees Parties (and their affiliates) agreed not to compete with the Apothecary Shoppe business for a period of five (5) years ending December 20, 2018. If the requested injunction is granted, it would bar the Lees Parties from claiming that the proposed purchaser may not purchase the noncompetition provisions of the MIPAs without also assuming the obligations which exist under that same contract.

Permanent injunction is an "extraordinary relief, and the court's injunctive power should only be exercised with great caution." *Paradise Distribs., Inc. v. Evansville Brewing Co.*, 906 F. Supp. 619, 622 (N.D. Okla. 1995). "'For a party to obtain a permanent injunction, it must prove: (1) actual success on the merits; (2) irreparable harm unless the injunction is issued; (3) the

---

[2] Counsel for the Lees Parties and the Receiver have jointly visited the two stores and believe that it is likely that all issues concerning what property can be sold and what remains with the real estate will be resolved. Because no amendment to the Sale Motion has been filed to reflect these meetings, the Lees Parties are including this argument to preserve this objection.

threatened injury outweighs the harm that the injunction may cause the opposing party; and (4) the injunction, if issued, will not adversely affect the public interest.'" *Sw. Stainless, LP v. Sappington*, 582 F.3d 1176, 1191 (10th Cir. 2009) (quoting *Prairie Band Potawatomi Nation v. Wagnon,* 476 F.3d 818, 822 (10th Cir.2007)).

Because of the extraordinary nature of an injunction, Oklahoma law requires that "[t]he applicant must show entitlement to injunctive relief, under the four criteria, by clear and convincing evidence." *Coxcom, Inc. v. Okla. Secondary Schs. Ath. Ass'n*, 2006 OK CIV APP 107, 143 P.3d 525, 528; *see also Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1023 (10th Cir. 2007) ("entitlement to injunctive relief must be established by clear and convincing evidence and the injury alleged must not be speculative").

Plaintiff and the Receiver will not be able to meet their burden of establishing each of the elements of a permanent injunction with clear and convincing evidence. Specifically, with respect to the first element of injunction, they will not be able to prove actual success on the merits. They cannot meet this burden because the Restrictive Covenants cannot be assigned separately from the two MIPAs in which they are contained. Plaintiff and the Receiver bears the burden of coming forward with legal authority that supports their desire to assign two pages out of multi-page agreements without assigning the entire contract.

Moreover, Plaintiff and the Receiver will be unable to prove that irreparable harm will occur unless the injunction is issued. "'A showing of irreparable harm is usually considered the single most important requirement in determining whether or not to issue a preliminary injunction.'" *Paradise Distributors, Inc.*, 906 F. Supp. at 622 (quoting *General Textile Printing & Processing Corp. v. Expromtorg Int'l Corp.,* 862 F.Supp. 1070, 1074 (S.D.N.Y.1994)). In order to obtain the requested injunction in this case, Plaintiff and the Receiver will have to show

that they will suffer irreparable injury unless the Lees Parties are forever barred from challenging the proposed assignment of the Restrictive Covenants. They will be unable to do so for at least two reasons.

First, the proposed purchaser under the Asset Purchase Agreement did not bargain for assignability of the Restrictive Covenants. Although the Sale Motion makes the boilerplate recitation that the injunction is necessary for the proposed sale to go through, Section 9.2(b) of the Asset Purchase Agreement signed by the purchaser states:

> Seller makes no representations or warranties regarding the assignability of the other Assigned Contracts or Restrictive Covenants.

Section 12 on Termination of the proposed Asset Purchase Agreement only allows the purchaser to terminate if the Sale Order does not provide for a sale of the Assets free and clear of any liens, claims, or encumbrances. There is no clause which would allow the purchaser to terminate if the Sale Order does not grant the requested injunction against the Lees Parties contesting assignability of the Restrictive Covenants. Thus, Plaintiff and the Receiver will not be able to show irreparable injury if the requested injunction is not entered.

Second, at the hearing held on March 18, 2016, despite the fact that the purchaser did not bargain for assignability of the Restrictive Covenants, the Receiver informed the Court that he was addressing possible reductions in the purchase price of the Assets in the event the Court does not enter an injunction prohibiting the Lees Parties from contesting assignment of the Restrictive Covenant. Again, this establishes that there will be no irreparable injury if the injunction is not granted.

### II. The Restrictive Covenants cannot be assigned.

The Restrictive Covenant cannot be assigned without also requiring the proposed purchaser to assume all of the corresponding obligations which are still owed under the MIPAs. Indeed, because the purchaser under the MIPAs has already defaulted, excusing the Lees Parties from further obligations under the Restrictive Covenants.

### a. A Contract Right Cannot be Assigned if it would Materially Impair Return Performance

Restatement Second of Contracts § 317(2)(a) states that contractual rights may be assigned, *unless*:

> **(a) The substitution of a right of the assignee for the right of the assignor would** materially change the duty of the obligor, or materially increase the burden or risk imposed on him by his contract, **or materially impair his chance of obtaining return performance, or materially reduce value to him**

Restatement (Second) of Contracts § 317 (1981) (emphasis added). In this case, the return performance due the Lees Parties in exchange for the Restrictive Covenants was the purchase price, a quarter of which remains unpaid. Material impairment of Lees Parties' ability to obtain that return performance is the express intent of the receiver. The receiver wishes to assign rights contained in the Restrictive Covenants while leaving the corresponding obligation to pay the balance of the purchase price (contained in the Seller Notes and the Seller Subordinate Note) in the insolvent entities.

### b. Assignment cannot Eliminate Defenses to Enforcement of the Restrictive Covenants

Through the Sale Motion, the Receiver is asking this Court to allow assignment of the Restrictive Covenants free and clear of any legal or equitable right, remedy, or claim. However, the receiver cannot make any assignment that eliminates any defenses which the Lees Parties

6

might have to enforcement of the Restrictive Covenants. The Restatement Second is clear in the fact that an assignee may only acquire rights that the assignor possesses, subject to any defenses:

> (1) By an assignment the assignee acquires a right against the obligor **only to the extent that the obligor is under a duty to the assignor; and if the right of the assignor would be voidable by the obligor or unenforceable against him if no assignment had been made, the right of the assignee is subject to the infirmity.**

Restatement (Second) of Contracts § 336 (1981) (emphasis added).

Delaware law follows this concept under the doctrine of "first breach" under which a party is excused from performance under a contract if the other party is in material breach. *BioLife Sols., Inc. v. Endocare, Inc.*, 838 A.2d 268, 270 (Del. Ch. 2003); *See also Hudson v. D & V Mason Contractors, Inc.*, 252 A.2d 166, 170 (Del. Super. 1969) ("As a general rule the party first guilty of a material breach of a contract cannot complain if the other party subsequently refuses to perform"). To determine whether the breach is material enough "to justify non-performance by the non-breaching party is one of degree and is determined by weighing the consequences in the light of the actual custom of men in the performance of contract similar to the one that is involved in the specific case." *BioLife Sols., Inc.*, 838 A.2d at 278 (quoting *E. Elec. & Heating, Inc. v. Pike Creek Prof'l Ctr.*, No. 85C-MR-79, 1987 WL 9610, at *1 (Del. Super. Apr. 7, 1987)). Furthermore, to justify nonperformance it is necessary that the material breach go to the substance of the contract. *Saienni v. G&C Capital Grp. Inc.*, 1997 WL 363919, at * 3 (Del. Super. May 1, 1997) (citations omitted); *see also Dickinson Med. Grp., P.A. v. Foote*, No. 84C-JL-22, 1989 WL 40965, at * 1 (Del. Super. Mar. 23, 1989) (holding that a medical group's failure to compensate a physician as the contract required was a material breach, which excused her continued employment).

Here, Lees Specialty Compounding, LLC, the obligee to the Restrictive Covenants, is in material default of the MIPAs because it defaulted on the Seller Notes and the Seller Subordinated Note under which the Lees Parties are entitled to receive 7,000,000. This failure is material because it constitutes over one fourth of the total price which was to be paid under the MIPAs.

In *Word v. Johnson*, the court was unable to hold a party in material breach for a late payment due under a contract. *Word v. Johnson*, No. CIV.A. 1004-N, 2005 WL 2899684, at * 4 (Del. Ch. Oct. 28, 2005). The court reasoned that had the contract specified that a late payment constituted a default, then the late payment could be treated as a material breach. This case is distinguishable because Lee Specialty Compounding failed to pay on its notes and the Receiver was appointed. The contract required payment on the Seller's notes, and this nonpayment and default was a material breach. Because Lee Specialty Compounding is in material breach, the Lees Parties do not have to perform their duties under the Restrictive Covenants under the contract, pursuant to the "first breach" doctrine of Delaware law.

**III.    Certain Assets Listed on Exhibit B to the Sale Motion do not belong to Defendants.**

Exhibit B to the Sale Motion is a list of tangible assets which the Receiver wishes to include in the sale. However, some of the listed items do not belong to any of the Defendants, but are instead the property of LJS Properties, LLC, the Landlord under the two Lease Agreements for 510 N. Elm Place in Broken Arrow and 6136 E. 51st Street in Tulsa. The assets which cannot be sold are as follows:

(a)    lockers at both properties which are physically attached;
(b)    with respect to "Rx Workstations" at both properties, the cabinets with attached acrylic hoods which are attached (Lees Parties do not object to the sale of computers);
(c)    with respect to 6136 E. 51st Street property, the flooring in sterile area;

(d) with respect to line item 88 on the 6136 E. 51st Street property, items listed as "Leasehold Improvements – Cabinets, Divider wall, HVAC, labor, lights, shelving" all items which are physical attached;

(e) while not specifically listed in Exhibit B to the Sale Motion, the generator at 6236 E. 51st Street.

All of these items are part of the real property which belongs to LJS Properties, LLC, and thus never became property of any of the Defendants and therefore are not covered by the lien of Plaintiff.

## **CONCLUSION**

Based on the above, the Lees Parties respectfully request that this Court deny the relief requested by Plaintiff and Receiver in the Sale Motion to the extent inconsistent with this objection.

Respectfully submitted,

*/s/ Charles Greenough*
Charles Greenough, OBA #12311
McAfee & Taft A Professional Corporation
1717 S. Boulder Ave., Suite 900
Tulsa, OK 74119
(918) 587-0000
(918) 574-3105 fax
charles.greenough@mcafeetaft.com

ATTORNEY FOR LEES PARTIES

**CERTIFICATE OF SERVICE**

I hereby certify that on the same date this document was filed, I electronically transmitted the foregoing document to the Clerk of the Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants.

The undersigned further states that on April 5, 2016, he caused a true and correct copy of the above referenced pleading to be emailed to the following parties:


C. David Rhoades
cdrhoades@turnaroundpro.com
Receiver


*/s/ Charles Greenough*
Charles Greenough